IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Progressive Northern Insurance Co.; Progressive Mountain Insurance Co. of Ohio, | ) ) ) | |
| Plaintiffs, | ) ) | **C.A. No.:** |
| v. | ) ) | |
| David McGee, III; David McGee, Jr. dba DMcGee Trucking; D. McGee Trucking, Inc.; Jack Akins dba KOI Expedited; Debra L. Frazier | ) ) ) ) ) | **COMPLAINT FOR DECLARATORY RELIEF** |
| Defendants. | ) ) ) | |

Plaintiffs, Progressive Northern Insurance Co. and Progressive Mountain Insurance Co. of Ohio, by and through their undersigned attorneys, complaining of the Defendants herein, seek a declaratory judgment from this Honorable Court as set forth below.

## PARTIES AND JURISDICTION

1.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2.     Progressive Northern Insurance Co. ("Progressive Northern") is a corporation organized under the laws of the State of Wisconsin with its principal place of business in the State of Ohio.

1

3.      Progressive Mountain Insurance Co. of Ohio ("Progressive Mountain") is a corporation organized under the laws of the State of Ohio with its principal place of business in the State of Ohio.

4.      Defendant David McGee, III ("McGee, III") is a citizen and resident of Sumter County, South Carolina.

5.      Defendant David McGee, Jr. dba DMcGee Trucking ("McGee, Jr") is a citizen and resident of Sumter County, South Carolina.

6.      Defendant D McGee Trucking, Inc. ("D McGee Trucking") is a corporation organized under the laws of the State of South Carolina with its principal place of business in the State of South Carolina.

7.      Defendant Jack Akins dba KOI Expedited ("Akins") is a citizen and resident of Walker County, Georgia.

8.      Defendant Debra L. Frazier ("Frazier") is a citizen and resident of Sumter County, South Carolina.

9.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1392(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## FACTUAL BACKGROUND

11.      On or about August 8, 2012, on South Carolina Highway 763 in Sumter County, South Carolina, Frazier was the driver a 2002 Toyota Camry when she was involved in a motor

vehicle accident with a 2000 GMC C7 Box Truck (VIN 1GDJ7H1C7YJ527199) ("the GMC Box Truck") operated by McGee, III ("the Accident").

12.     At the time of the Accident, McGee, III owned the GMC Box Truck.

13.     At the time of the Accident, McGee, III was driving the GMC Box Truck for the purpose of having it serviced.

14.     At the time of the Accident, McGee, III was not transporting property/cargo in the GMC Box Truck and the GMC Box Truck was unladen.

15.     At the time of the Accident, Akins was licensed with the Federal Motor Carrier Safety Administration as a common and contract carrier of property under DOT No. 2251799 and Motor Carrier No. 00768248.

16.     Upon information and belief, at the time of the Accident, McGee, III had in place an equipment lease agreement with Akins whereby McGee, III would transport property for compensation under the Motor Carrier/DOT authority of Akins ("the Akins-McGee Lease Agreement").

17.     While the Akins-McGee Lease Agreement was in effect at the time of the Accident, McGee, III was not transporting any property pursuant to the Akins-McGee Lease Agreement at the time of the Accident.

18.     At the time of the Accident, McGee, III was not using the GMC Box Truck to transport cargo in interstate commerce under the Motor Carrier/DOT authority of Akins.

19.     At the time of the Accident, McGee, III was not using the GMC Box Truck to transport cargo in intrastate commerce under the Motor Carrier/DOT authority of Akins.

20.     At the time of the Accident, McGee, III was not operating the GMC Box Truck as the agent or employee of Akins.

21. At the time of the Accident, McGee, III was not operating the GMC Box Truck in furtherance of or in connection with Akins' business.

22. At the time of the Accident, McGee, Jr. was licensed with the Federal Motor Carrier Safety Administration as a contract carrier of property under DOT No. 1997906 and Motor Carrier No. 00707906.

23. At the time of the Accident, McGee, III was not using the GMC Box Truck to transport cargo in interstate commerce under the Motor Carrier/DOT authority of McGee, Jr.

24. At the time of the Accident, McGee, III was not using the GMC Box Truck to transport cargo in intrastate commerce under the Motor Carrier/DOT authority of McGee, Jr.

25. At the time of the Accident, McGee, III was not operating the GMC Box Truck as the agent or employee of McGee, Jr.

26. At the time of the Accident, McGee, III was not operating the GMC Box Truck in furtherance of or in connection with McGee, Jr.'s business.

27. The trip McGee, III was engaged in at the time of the Accident was purely intrastate in that it originated and terminated solely within the State of South Carolina.

28. At the time of the Accident, D McGee Trucking was not licensed as an interstate or intrastate motor carrier.

29. At the time of the Accident, McGee, III was not operating the GMC Box Truck as the agent or employee of D McGee Trucking.

30. At the time of the Accident, McGee, III was not operating the GMC Box Truck in furtherance of or in connection with D McGee Trucking's business.

Underlying Lawsuit

31.     Frazier alleges she sustained personal injuries as a result of the Accident and initiated a personal injury lawsuit in the South Carolina Court of Common Pleas, Sumter County, against McGee, III, McGee, Jr., D McGee Trucking, and Akins on July 24, 2015, C.A. No. 2015-CP-43-1729 ("the Underlying Lawsuit").

32.     Upon information and belief, McGee, III hired personal counsel and was the only defendant to file an Answer or otherwise plead in response to the Complaint filed in the Underlying Lawsuit.

33.     On April 14, 2020, an Order of Default was entered against McGee, Jr, D McGee Trucking, and Akins in the Underlying Lawsuit.

34.     On October 22, 2020, a damages hearing was held before a Special Referee, following which on March 10, 2021, the Special Referee entered judgment by default against McGee, Jr., D McGee Trucking, and Akins in the amount of Three Million Five Hundred Thirty-Two Thousand Four Hundred Forty-Two and 99/100 Dollars ($3,532,442.99) ("the Default Judgment").  No judgment was entered against McGee, III.

35.     Progressive Northern did not have notice of the initiation of the Underlying Lawsuit until after entry of the Default Judgment.

36.     Progressive Mountain did not have notice of the initiation of the Underlying Lawsuit until after entry of the Default Judgment.

37.     McGee, III, McGee, Jr, D McGee Trucking, and Akins never provided Progressive Northern with a copy of the Underlying Lawsuit and did not request a defense in connection with the Underlying Lawsuit until after entry of the Default Judgment.

38.     McGee, III, McGee, Jr., D McGee Trucking, and Akins never provided Progressive Mountain with a copy of the Underlying Lawsuit and did not request a defense in connection with the Underlying Lawsuit until after entry of the Default Judgment.

### McGee, Jr. Policy

39.     At the time of the Accident, Progressive Northern had in place a commercial auto liability policy, Policy No. 08117991-1 issued to McGee, Jr. with effective dates of June 30, 2012, through June 30, 2013 and combined single liability limits of $1,000,000 ("the McGee, Jr. Policy"). A true and accurate copy of the McGee, Jr. Policy, its endorsements, and its declaration pages is attached to this Complaint as **Exhibit A**.

40.     The McGee, Jr. Policy was issued to McGee, Jr. in South Carolina and is written on South Carolina forms.

41.     The only autos identified on the Declarations Page to the McGee, Jr. Policy are a 2000 Freightliner VIN 1FUPDSZB2YLB94913 and a 1997 Trailmobile Trailer VIN 1PT01JAH1V9004228.

42.     The GMC Box Truck is not listed or otherwise scheduled on the Declarations Page to the McGee, Jr. Policy.

43.     The McGee, Jr. Policy's Insuring Agreement with respect to Part I—Liability to Others provides, as modified by the South Carolina Amendatory Endorsement (Form 4881 SC), in relevant part, as follows:

> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages. . . for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of ownership, maintenance, or use of that insured auto. . . .
>
> We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I.  We have no duty to settle or defend any lawsuit, or make any

additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

44.    "Insured" for purposes of Part I—Liability to Others is defined by the McGee, Jr.

Policy as follows:

1.    You with respect to an insured auto.

2.    Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:
(a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing autos, unless that business is yours and it was so represented in your application.
(b) A person, other than one of your employees, partners (if you are a partnership), members (if you are a limited liability company), officers or directors (if you are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an insured auto.
(c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto. However, this exception does not apply if the insured auto is specifically described on the declarations page.

For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the declarations page.

3.    Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability to Others.

If we make a filing or submit a certificate of insurance on your behalf with a regulatory or governmental agency, the term "insured" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

45.    "Insured auto" or "your insured auto" is defined by the McGee, Jr. Policy as

follows:

a.    Any auto specifically described on the declarations page; or
b.    An additional auto for Part I – Liability to Others . . . on the date you become the owner if:
    i.    you acquire the auto during the policy period shown on the declarations page;
    ii.    we insure all autos owned by you that are used in your business;
    iii.    no other insurance policy provides coverage for that auto; and

      iv.    you tell us within 30 days after you acquire it that you want us to cover it for that coverage.

***

With respect to Part I - Liability To Others, if we provide coverage for an additionally acquired auto in accordance with this paragraph b., we will provide the same coverage for such additional auto as we provide for any auto shown on the declarations page.

***

c.   Any replacement auto on the date you become the owner if:

      i.    you acquire the auto during the policy period shown on the declarations page;

      ii.   the auto that you acquire replaces one specifically described on the declarations page due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable; and

      iii.  no other insurance policy provides coverage for that auto.

If we provide coverage for a replacement auto, we will provide the same coverage for the replacement auto as we provide for the replaced auto. We will provide that coverage for a period of 30 days after you become the owner of such replacement auto. We will not provide any coverage after this 30 day period unless within this period you ask us to insure the replacement auto. (. . .)

***

When used in Part I - Liability To Others, insured auto also includes:

1.Trailers designed primarily for travel on public roads, while connected to your insured auto that is a power unit;

2.Mobile equipment while being carried or towed by an insured auto; and

3.Any temporary substitute auto.

46.     The McGee, Jr. Policy includes the following further relevant definitions:

1. "Accident" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

2."Auto" means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where itis licensed or principally garaged. It does not include mobile equipment. Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment: (. . .)

3."Bodily injury" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4."Declarations" or "declarations page" means the document prepared by us listing your policy information, which may include the types of coverage you have elected,

8

the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage foreach specifically described auto.

\*\*\*

14. "Temporary substitute auto" means any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

15. "Trailer" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

16. "We", "us" and "our" mean the company providing this insurance as shown on the declarations page.

17. "You", "your" and "yours" refer to the named insured shown on the declarations page.

47.     The LIMIT OF LIABILITY Section of the McGee, Jr. Policy additionally provides,

in relevant part, as follows:

We will pay no more than the Limit of Liability shown on the declarations page for this coverage for the insured auto involved in the accident regardless of:

1. the number of premiums paid;
2. the number of insured autos or trailers shown on the declarations page;
3. the number of policies issued by us;
4. the number of vehicles or insureds involved in an accident; or
5. the number of claims or lawsuits arising out of an accident,
subject to the following:

1. Coverage Required by Filings

If we have filed a certificate of insurance on your behalf with any regulatory or governmental agency, and:
(i) we are required to pay any judgment entered against you; or
(ii) we agree to settle a claim or lawsuit;
for bodily injury, property damage, or covered pollution cost or expense arising out of an accident or loss otherwise not covered under the terms of this policy solely because of such certificate of insurance, we will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, you must reimburse us in full for our payment, including legal fees and costs we incurred, whether the payment is made as a result of judgment or settlement.

48.    The McGee, Jr. Policy provides that the following duties apply in the event of an

accident or loss:

> For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number. ( . . .)
> ***
> A person seeking coverage must:
> 1. cooperate with us in any matter concerning a claim or lawsuit;
> 2. provide any written proof of loss we may reasonably require;
> 3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;
> 4. promptly call us to notify us about any claim or lawsuit and send us any and all legal papers relating to any claim or lawsuit;
> 5. attend hearings and trials as we require;
> ***
> 10. authorize us access to your business or personal records as often as we may reasonably require.

49.    Finally, the McGee, Jr. Policy's MCS-90 Endorsement was issued to David McGee,

Jr, DMcGee Trucking of 3280 W. Brewington Road, Sumter, SC 29153 in the amount of $1,000,000.

There are no Form E/F endorsements on the McGee, Jr. Policy. The MCS-90 Endorsement provides

as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and

limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

<u>Akins Policy</u>

50.    At the time of the Accident, Progressive Mountain had in place a commercial auto liability policy, Policy No. 08376448-0 issued to Jack Akins, KOI Expedited with effective dates of December 30, 2011, to the date of cancellation of July 25, 2012 at 12:01 a.m. and combined single limits of $1,000,000 (the "Akins Policy"). A true and accurate copy of the Akins Policy, its endorsements, and its declaration pages is attached to this Complaint as **Exhibit B**.

51.    The Akins Policy was issued to Akins in Georgia and is written on Georgia forms.

52.     The Akins Policy was cancelled consistent with the terms of the Akins Policy on July 25, 2012, said cancellation was effective prior to the Accident.

53.    The Akins Policy contained the federally-mandated MCS 90 endorsement in the name of Jack Akins, KOI Expedited of 315 Chandler Road, Chickamauga, GA 30707 in the amount of $1,000,000.  There are no Form E/F Endorsements on the Akins Policy. The MCS-90 Endorsement provides as follows:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public

liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

54.    The MCS 90 endorsement on the Akins Policy was cancelled September 4, 2012, said cancellation was not effective until after the Accident.

55.    The Akins Policy's Insuring Agreement with respect to Part I—Liability to Others, as modified by the Georgia Amendatory Endorsement (Form 4881), provides, in relevant part, as follows:

Subject to the limits of liability, if you pay the premium for liability coverage, we will pay damages for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident, arising out of the ownership, maintenance, or use of an insured auto. . . .

56.    The Akins Policy defines "insured", when used in Part I – Liability to Others, in relevant part as follows:

> 1. You with respect to an insured auto.
>
> 2. Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:
> ***
> (c) The owner or anyone else from whom the insured auto is leased, hired or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto. However, this exception does not apply if the insured auto is specifically described on the Declarations Page, but only for that insured auto.
>
> For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the Declarations Page.
>
> 3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.
>
> If we make a filing or submit a certificate of insurance on your behalf with a regulatory or governmental agency, the term "insured" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

57.    The Akins Policy includes the following further relevant definitions:

> 3."Bodily injury" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
>
> 4."Declarations" or "Declarations Page" means the document prepared by us listing your policy information, which may include the types of coverage you have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.
> ***
> 16."We", "us" and "our" mean the company providing this insurance as shown on the Declarations Page.
>
> 17."You","your"and "yours" refer to the named insured shown on the Declarations Page.

58.    The LIMIT OF LIABILITY Section of the Akins Policy additionally provides, in relevant part, as follows:

Regardless of the number of premiums paid, or the number of insured autos or trailers shown on the Declarations Page, or the number of policies issued by us, or the number of vehicles or insureds involved in an accident, or the number of claims or lawsuits arising out of an accident, we will pay no more than the Limit of Liability shown for this coverage on the Declarations Page, subject to the following:

1. Coverage Required by Filings

If we have filed a certificate of insurance on your behalf with any regulatory or governmental agency, and:
(i) we are required to pay any judgment entered against you; or
(ii) we agree to settle a claim or lawsuit;

for bodily injury, property damage, or covered pollution cost or expense arising out of an accident or loss otherwise not covered under the terms of this policy solely because of such certificate of insurance, we will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, you must reimburse us in full for our payment, including legal fees and costs we incurred, whether the payment is made as a result of judgment or settlement.

2. Combined Bodily Injury and Property Damage Limits

Subject to the terms of Section 1 above, if your Declarations Page indicates that combined bodily injury and property damage limits apply for "each accident" or "combined single limit" applies, the most we will pay for the aggregate of all damages and covered pollution cost or expense combined, resulting from any one accident, is the combined liability insurance limit shown on the Declarations Page.

59.    The Akins Policy provides that the following duties apply in the event of an accident,

claim, loss or suit:

**Notify Us As Soon As Practicable After An Accident Or Loss**
If an insured or insured auto is involved in an accident or loss for which this insurance may apply, the accident or loss must be reported to us as soon as practicable by calling claims service, even if the insured is not at fault. Refer to your policy documents for the claims phone number.
You, or any other person or organization claiming coverage as an insured, should provide the following accident or loss information as soon as it is available:
- time, place, and circumstances of the accident or loss (for example, how the accident happened and weather conditions);
- names and addresses of all persons involved, and of any witnesses;
- the license plate numbers of the vehicles involved; and
- any other facts available concerning the accident or loss.
*** 

14

You and any person or organization claiming coverage as an insured must:

- assume no obligation, make no payment, or incur no expense without our consent, except at the insured's own cost;
- cooperate with us in any matter concerning a claim or lawsuit;
- provide any written proof of loss we may reasonably require;
- allow us to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions we may ask as often as we may reasonably require;
- promptly send us any and all legal papers relating to any claim or lawsuit;

*\*\**

Form 4881 GA, Georgia Amendatory Endorsement, adds the following to Your Duties In The Event Of An Accident, Claim, Loss Or Suit:

**For coverage to apply under this policy, you or an insured must promptly report each accident or loss even if an insured is not at fault.**

60.    The Akins Policy further contains the following "General Provisions":

**1. Policy Period and Territory**

This policy applies only to accidents and losses occurring within the policy period shown on the Declarations Page and which occur within any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, or while an insured auto is being transported between their ports.

61.    Form 4852 GA, Cancellation and Nonrenewal Endorsement, attached to the Akins Policy provides, in relevant part, as follows:

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.
We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**CANCELLATION**

You may cancel this policy by returning the original policy to us (. . .)
We may cancel this policy by mailing a notice of cancellation to the named insured shown on the Declarations Page at the last known address appearing in our records. If we cancel this policy within the first fifty-nine (59) days of the initial policy period, or if we cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least ten (10) days before the effective date of cancellation. After this policy has been in effect for more than fifty-nine (59) days, notice of cancellation due to any reason other than nonpayment of premium will be mailed at least forty-five (45) days before the effective date of cancellation.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all autos.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

****

**PROOF OF NOTICE**

Proof of mailing of any notice will be sufficient proof of notice.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

62.    Progressive Northern and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described hereinabove.

63.    Progressive Mountain and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described hereinabove.

Case or Controversy Requirements are Satisfied

64.    All proper and present antagonistic interests or all parties having any interest in the outcome and adjudication of the present controversy are before the Court by proper process.

65.    Progressive Northern is in doubt with respect to its rights under the McGee, Jr. Policy and, by this Complaint, seeks a declaration of its rights and obligations under the McGee, Jr. Policy with respect to claims asserted by or against the Defendants in the Underlying Lawsuit.

66.    Progressive Mountain is in doubt with respect to its rights under the Akins Policy and, by this Complaint, seeks a declaration of its rights and obligations under the Akins Policy with respect to the claims asserted by or against the Defendants in the Underlying Lawsuit.

67.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment as to McGee, Jr. Policy)

68.     Progressive Northern restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

69.     The McGee, Jr. Policy affords no liability coverage for the Accident because at all times relevant to the Accident the GMC Box Truck did not qualify as an "insured auto" entitled to liability coverage under Part I of the McGee, Jr. Policy because the GMC Box Truck was not scheduled on the Declarations Page to the McGee, Jr. Policy and did not otherwise qualify as an additional auto, replacement auto, or temporary substitute auto as of the time of the Accident.

70.     The McGee, Jr. Policy affords no liability coverage for the Accident because at all times relevant to the Accident, neither McGee, Jr., D McGee Trucking, McGee, III, Akins nor any other defendant qualified as an "insured" entitled to liability coverage under Part I of the McGee, Jr. Policy.

71.     The McGee, Jr. Policy affords no liability coverage for the Accident because Progressive Northern was not provided with notice of the Underlying Lawsuit or afforded an opportunity to defend the Underlying Lawsuit until after entry of the Default Judgment, and accordingly, Progressive Northern has sustained prejudice.

72.     Alternatively, to the extent any liability coverage is provided for under the McGee, Jr. Policy in relation to the Accident, which Progressive Northern disputes, such coverage is limited to the minimum liability coverage required of passenger vehicles by South Carolina law because the GMC Box Truck was not being used to transport cargo belonging to another for compensation at the time of the Accident.

73.     The MCS 90 Endorsement to the McGee, Jr. Policy is not triggered by the facts of the Accident because McGee, Jr., the sole proprietorship named in the MCS 90 Endorsement, was

not operating as a for-hire motor carrier transporting property belonging to another for compensation in interstate commerce at the time of the Accident.

74.    The MCS 90 Endorsement to the McGee, Jr. Policy is not triggered by the facts of the Accident because McGee, III was not operating the GMC Box Truck pursuant to the Motor Carrier/DOT authority of McGee, Jr. at the time of the Accident.

75.    The MCS 90 Endorsement to the McGee, Jr. Policy is not triggered by the facts of the Accident because McGee, III was not operating the GMC Box Truck as an employee and/or agent of McGee, Jr. at the time of the Accident.

76.    Even assuming the MCS 90 Endorsement to the McGee, Jr. Policy was triggered under the facts of the Accident, which Progressive Northern disputes, the MCS 90 Endorsement does not trigger any duty upon Progressive Northern to defend McGee, Jr. or any other individual or entity.

77.    For each of the foregoing reasons, Progressive Northern is entitled to an Order holding:

    i.   The McGee, Jr. Policy does not afford liability coverage for any losses sustained in the Accident.

    ii.   Progressive Northern has no duty to defend or indemnify McGee, Jr., D McGee Trucking, McGee, III, Akins or any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit.

    iii.   The MCS 90 Endorsement to the McGee, Jr. Policy is not triggered under the facts of the Accident.

iv.     Progressive Northern has no duty to indemnify or otherwise satisfy any judgment entered in connection with the Accident and/or the Underlying Lawsuit, including but not limited to the Default Judgment.

**FOR A SECOND CAUSE OF ACTION**
**(Declaratory Judgment as to Akins Policy)**

78.     Progressive Mountain restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

79.     The Akins Policy affords no liability coverage for the Accident because the Akins Policy had been cancelled, said cancellation became effective prior to the date of the Accident.

80.     The Akins Policy affords no liability coverage for the Accident because Progressive Mountain was not provided with notice of the Underlying Lawsuit or afforded an opportunity to defend the Underlying Lawsuit until after entry of the Default Judgment, and accordingly, Progressive Mountain has sustained prejudice.

81.     Alternatively, to the extent any liability coverage is provided for under the Akins Policy in relation to the Accident, which Progressive Mountain disputes, such coverage is limited to the minimum liability coverage required of passenger vehicles by South Carolina law because the GMC Box Truck was not being used to transport cargo belonging to another for compensation at the time of the Accident.

82.     The MCS 90 Endorsement to the Akins Policy is not triggered by the facts of the Accident because Akins, the sole proprietorship named in the MCS 90 Endorsement, was not operating as a for-hire motor carrier transporting property belonging to another for compensation in interstate commerce at the time of the Accident.

83. The MCS 90 Endorsement to the Akins Policy is not triggered by the facts of the Accident because McGee, III was not operating the GMC Box Truck pursuant to the Motor Carrier/DOT authority of Akins at the time of the Accident.

84. The MCS 90 Endorsement to the Akins Policy is not triggered by the facts of the Accident because McGee, III was not operating the GMC Box Truck as an employee and/or agent of Akins at the time of the Accident.

85. Even assuming the MCS 90 Endorsement to the Akins Policy was triggered, which Progressive Mountain disputes, the MCS 90 Endorsement does not trigger any duty upon Progressive Mountain to defend Akins or any other individual or entity.

86. For each of the foregoing reasons, Progressive Mountain is entitled to an Order holding:

     i.    The Akins Policy does not afford liability coverage for any losses sustained in the Accident.

    ii.    Progressive Mountain has no duty to defend or indemnify McGee, Jr., D McGee Trucking, McGee, III, Akins or any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit.

   iii.    The MCS 90 Endorsement to the Akins. Policy is not triggered under the facts of the Accident.

   iv.    Progressive Mountain has no duty to indemnify or otherwise satisfy any judgment entered in connection with the Accident and/or the Underlying Lawsuit, including but not limited to the Default Judgment.

WHEREFORE, Progressive Northern Insurance Co. and Progressive Mountain Insurance Co. of Ohio pray that the Court enter judgment in their favor as set forth hereinabove and for such other and further relief as is just and proper.

Respectfully submitted this  25th day of August, 2021.

    s/Robert "Rocky" C. Rogers
Robert D. Moseley, Jr. (Fed Bar #05526)
Robert "Rocky" C. Rogers (Fed Bar #11655)
Moseley Marcinak Law Group LLP
4324 Wade Hampton Blvd., Suite B
Taylors, SC 29687
PO Box 26148
Greenville, South Carolina 29616
(864) 248-6025 (864) 248-6035 (Fax)
Rob.Moseley@momarlaw.com
Rocky.Rogers@momarlaw.com
*Attorneys for Plaintiffs, Progressive Northern Insurance Co. and Progressive Mountain Insurance Co. of Oh*